UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SREDRICK ROBINSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:25 CV 863 CDP |
| ) | |
| URBAN STRATEGIES, INC., ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM AND ORDER**

Plaintiff Sredrick Robinson brings this employment discrimination action against his former employer, Urban Strategies, Inc. (USI). Robinson alleges gender, religious, age, and race discrimination, a hostile work environment, and retaliation. His initial complaint alleged that the claims were brought under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq.*), the Age Discrimination in Employment Act (29 U.S.C. § 621 *et seq.*) (ADEA), and the Missouri Human Rights Act (§ 213.055 Mo. Rev. Stat) (MHRA). Instead of responding to defendant's motion to dismiss, Robinson filed a motion for leave to amend his complaint. The proposed amended complaint is less vague than the original. It makes many of the same or similar allegations but drops the state-law claim under the MHRA.

Defendant argues that leave to amend should be denied because the proposed amended complaint suffers from the same failures as the original complaint, so

amendment is futile.  In the interests of judicial economy, I will grant the motion for leave to amend and will treat the original motion to dismiss as if it were directed to the proposed amended complaint.  I will grant the motion to dismiss as to the claim of hostile work environment and will deny it otherwise.

## Background

Robinson's proposed amended complaint alleges the following facts: Robinson is an African-American man who is over 40 years old and an ordained Christian minister.  He was recruited by USI in April 2021 because of his background in community service and his nonprofit Christian ministry, Love in Action (LIA), which supports underserved families in St. Louis, Missouri.  When Robinson was initially hired, USI gave him the title of Community Service Liaison and a "9/80 work schedule," which allowed him to work from home on Fridays "to serve families through his work ministry."[1]  ECF 14, Proposed Amended Complaint ¶ 26.

In January 2022, USI approved Robinson's request for an exemption from the company's COVID-19 vaccination requirement based on his sincerely-held religious beliefs.  During the first year of Robinson's employment, USI changed his job title from Community Service Liaison to Family Support Specialist II "as part of a company-wide, non-competitive internal title change, without meaningful explanation."  *Id.* ¶ 34.  Robinson alleges that the change in title "reduced the formal

---

[1] It is not clear whether Robinson is alleging that the 9/80 work schedule allowed him to work from home every Friday or every other Friday.

recognition of the Plaintiff's ministerial partnership role" and "signaled a broader shift in how the USI handles the Plaintiff's religious affiliations and protection activities." *Id.* ¶ 37.

USI's leadership ended remote work later in 2022. Robinson asked to continue working from home on Fridays because of his ministerial commitments, but USI denied his request. He alleges that his manager and staff in other departments were still permitted to work from home. USI later instructed Robinson to stop engaging in LIA activities and wearing LIA apparel during work hours, citing concerns about a conflict of interest. USI also directed him to complete a conflict-of-interest form, claiming that he had diverted USI's clients from USI to his own ministry, used a company phone as a prayer line, included LIA colleagues on internal USI emails, and solicited a contract from USI for LIA.

Robinson alleges that other USI employees were affiliated with outside companies during the same time, but they did not receive the same negative treatment from USI. Robinson states that USI's conflict-of-interest allegations were pretextual because LIA had partnered with USI before he joined USI, and LIA continued to appear as a partner on USI's internal listings and newsletters after making its allegations against him. After Robinson filed internal complaints with USI about bias in the promotion process, lack of religious accommodation, and targeting of his ministry, USI retaliated against him by creating a performance improvement plan for

him based on alleged unprofessional comments, but USI later withdrew the plan and gave him a good evaluation for 2022. USI also increased its scrutiny of his work and threatened to take unfounded disciplinary actions against him.

In 2023, USI received a federal grant, which created a need for new positions that offered opportunities for promotions within the company. Plaintiff alleges that he was qualified and interested in the promotions, but USI did not provide him with notice of the openings. "While other markets received internal emails announcing openings, Plaintiff and the St. Louis staff were not consistently informed about vacancies related to the . . . grant." *Id.* ¶ 51. As a result, Robinson usually learned about openings after they had been filled or from external job postings, which prevented him from applying in a timely manner. During this time, USI promoted younger, less-experienced women to roles related to the grant. USI claimed that Robinson was excluded from the promotional opportunities due to the alleged conflict of interest with LIA, but this reason was pretextual. Robinson consistently received strong performance evaluations and the highest merit pay increase among peers in 2023. "Despite Plaintiff's efforts to demonstrate interest in career advancement, USI either ignored his applications or did not give him the same opportunity to apply as similarly situated employees." *Id.* ¶ 75.

**Leave to Amend**

Under Federal Rule of Civil Procedure 15(a)(2), the Court has discretion to grant leave to amend a complaint and should freely do so "when justice so requires." Denial of leave to amend is appropriate in limited circumstances where the motion to amend was filed in bad faith, with dilatory motive, or with undue delay; where leave to amend would be unduly prejudicial to the opposing party; or where amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Hillesheim v. Myron's Cards & Gifts, Inc.*, 897 F.3d 953, 955 (8th Cir. 2018). An amendment is futile if it cannot withstand a Rule 12(b)(6) motion to dismiss. *Hillesheim*, 897 F.3d at 955. Defendant invokes Rule 12(b)(6), arguing that amendment is futile because Robinson's proposed amended complaint fails to state a claim upon which relief can be granted. In the interests of judicial economy, and because the parties have briefed the motion to amend under the motion to dismiss standards, I will grant the motion to amend and then consider the motion to dismiss as if it were directed to the amended complaint.

**Motion to Dismiss**

For Robinson's amended complaint to survive Rule 12(b)(6) scrutiny, it "must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation modified). Legal conclusions couched as factual allegations are not taken as true.

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Iqbal*, 556 U.S. at 677-78.  I must liberally construe the complaint and grant all reasonable inferences in Robinson's favor.  *Cook v. George's, Inc.*, 952 F.3d 935, 938 (8th Cir. 2020).

**Count I – "Failure to Promote (Age and Sex Discrimination)"**

To establish a failure-to-promote claim, a plaintiff must allege and ultimately show that:  (1) he is a member of a protected group, (2) he was qualified and applied for a promotion to a position for which the employer was seeking applicants, (3) he was not promoted, and (4) similarly situated employees who were not part of the protected group were promoted instead.[2]  *Dotson v. Delta Consol. Indus., Inc.*, 251 F.3d 780, 781 (8th Cir. 2001).  Failure to formally apply for a job opening will not bar a Title VII plaintiff from establishing a prima facie case "if the job opening was not officially posted or advertised and either (1) the plaintiff had no knowledge of the job from other sources until it was filled, or (2) the employer was aware of the plaintiff's interest in the job notwithstanding the plaintiff's failure to make a formal application."  *Chambers v. Wynne Sch. Dist.*, 909 F.2d 1214, 1217 (8th Cir. 1990).

"At the pleading phase, a plaintiff need not plead facts establishing a prima facie case for their Title VII claim" because "the prima facie model is an evidentiary, not a pleading, standard."  *Warmington v. Bd. of Regents of Univ. of Minn.*, 998 F.3d 789, 796 (8th Cir. 2021) (citations omitted).  Thus, "there is no need to set forth a

---

[2] Claims of discrimination brought under Title VII and the ADEA are subject to the same analysis.  *See Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 776 (8th Cir. 1995).

detailed evidentiary proffer in a complaint." *Id.* "However, elements of the prima facie case are not irrelevant to a plausibility determination in a discrimination suit. Instead, such elements are part of the background against which a plausibility determination should be made." *Blomker v. Jewell*, 831 F.3d 1051, 1056 (8th Cir. 2016) (citation modified).

USI argues that the proposed amended complaint fails to adequately allege that Robinson applied for a particular position and was rejected despite his qualifications. Although the proposed amended complaint is – like the original complaint – vague on many details and fails to list any specific position that Robinson applied for, it does list names of individuals that he says were promoted instead, so presumably the positions to which they were promoted are known to defendant. It also alleges that despite Robinson's qualifications and demonstrated interest in the new positions, he was not informed of and did not learn about most of the new openings until after they were filled. Taken together and liberally construed, these allegations are sufficient at this stage of the case. *See Chambers*, 909 F.2d at 1217. The proposed amended complaint also alleges that "USI either ignored his applications or did not give him the same opportunity to apply as similarly situated employees," ECF 1 ¶ 75, which can be liberally construed as an allegation that he applied for more than one position.

**Count II – "Religious Discrimination and Failure to Accommodate"**

"A failure to accommodate religion, while actionable, is not a freestanding cause of action under Title VII." *Cole v. Grp. Health Plan, Inc.*, 105 F.4th 1110, 1113 (8th Cir. 2024) (citing *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 771-73 (2015)). It is, instead, a type of "religious discrimination (also called 'disparate treatment')" claim. *Brokken v. Hennepin Cty.*, 140 F.4th 445, 451 (8th Cir. 2025); *Cole*, 105 F.4th at 1113 (declining to address plaintiff's reasonable accommodation arguments, and instead analyzing plaintiff's "allegations in the context of a disparate treatment claim"). "To establish a prima facie case of religious discrimination, a plaintiff must show: (1) she is a member of a protected class because of her religious beliefs, (2) she met her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination." *Cole*, 105 F.4th at 113 (quoting *Shirrell v. St. Francis Med. Ctr.*, 793 F.3d 881, 887 (8th Cir. 2015)). To establish a prima facie case of religious discrimination based on a failure to accommodate religious beliefs, a plaintiff must allege: "(1) that they have a bona fide religious belief that conflicts with an employment requirement; (2) that they informed employer of this belief; and (3) that they were disciplined for failing to comply with the conflicting requirement of employment." *Ringhofer v. Mayo Clinic, Ambulance*, 102 F.4th 894, 900 (8th Cir. 2024) (citation modified). "To survive a motion to dismiss, plaintiffs must

adequately identify religious views they believe to conflict with the employer's policy." *Brokken*, 140 F.4th at 451 (citation modified).

Robinson alleges that USI initially agreed to accommodate his religious views by allowing him to work what he refers to as a "9/80 work schedule with Fridays reserved for remote work to support Plaintiff's ministerial duties." He alleges that when USI revoked remote work for all employees, it violated the law by not accommodating his need to work in his ministry on Fridays. He claims that USI's refusing to allow him to work in his private ministry while on the clock for USI and forbidding him to solicit USI's clients and wear his Love in Action attire at work constituted a failure to accommodate his religious views.

Robinson does not allege how the USI policies or actions conflicted with his religious beliefs. His amended complaint is especially vague in explaining whether the accommodation he was seeking was a shorter work week, an agreement that he could solicit USI's clients for services from his ministry in competition with services provided by USI, or merely to be allowed to wear his Love in Action attire at work. The documents Robinson attached to his amended complaint and the arguments set out in that complaint raise serious questions about whether this is, in fact, a claim on which he is likely to prevail. Nevertheless, accepting, as I must, Robinson's allegations that he was singled out because of his religion while other employees

were allowed to continue remote work, engage in private businesses, and wear advertising attire while at work, I will allow this claim to go forward.

**Count III – "Retaliation for Protected Activity"**

To establish a prima facie case of retaliation, a plaintiff must ultimately show that:  (1) he engaged in statutorily protected conduct, (2) he suffered an adverse employment action, and (3) a causal connection exists between the two.  *Wilson v. Ark. Dep't of Hum. Servs.*, 850 F.3d 368, 372 (8th Cir. 2017).  "Given that this prima facie model is an evidentiary, not a pleading standard, . . . the complaint's allegations must only give plausible support to these elements."  *Norgren v. Minn. Dep't of Hum. Servs.*, 96 F.4th 1048, 1055 (8th Cir. 2024) (citation modified).  "Under the 'simplified notice pleading standard' that governs *McDonnell Douglas* retaliation claims, summary judgment motions – not motions to dismiss – should dispose of most unmeritorious claims."  *Wilson*, 850 F.3d at 372 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002)).

USI argues that Robinson's retaliation claim fails because his allegations are conclusory and insufficient to support an inference that retaliation was the but-for cause of any adverse employment action.  Reviewing the proposed amended complaint as a whole under the simplified notice pleading standard for retaliation claims, I find that Robinson has adequately alleged causation.  The proposed amended complaint alleges that USI prohibited Robinson from wearing

ministry-related clothing and participating in ministry activities, did not give him notice of opportunities for promotions, and threatened discipline after he complained about discrimination and the denial of his requests for accommodation. While the amended complaint is not clear about the timing of events, Robinson's allegations that the adverse employment actions occurred after his protected conduct are sufficient to state a retaliation claim. *See Wilson*, 850 F.3d at 373 (concluding that plaintiff adequately alleged but-for causation where she alleged that she was a "victim of . . . retaliation, after having complained" about discrimination). I will therefore grant Robinson leave to amend his complaint to pursue his retaliation claim.

### Count IV – "Hostile Work Environment"

To establish a prima facie case for hostile work environment, a plaintiff must show that: (1) he is a member of a protected group; (2) he was subject to unwelcome harassment; (3) the harassment was because of membership in the protected group; and (4) the harassment affected a term, condition, or privilege of employment.[3] *Malone v. Ameren UE*, 646 F.3d 512, 517 (8th Cir. 2011) (citing *Singletary v. Mo. Dep't of Corr.*, 423 F.3d 886, 892 (8th Cir. 2005)). "At the pleading phase, the court must determine whether the alleged harassment is 'severe or pervasive enough to create an objectively hostile or abusive work environment and the victim must

---

[3] "Courts apply the same standards to evaluate a hostile work environment claim under § 1981 as under Title VII." *Anderson v. Durham D & M, L.L.C.*, 606 F.3d 513, 518 (8th Cir. 2010) (citing *Ross v. Kansas City Power & Light Co.*, 293 F.3d 1041, 1050 (8th Cir. 2002)).

subjectively believe h[is] working conditions have been altered.'" *Warmington*, 998 F.3d at 799 (quoting *Blomker*, 831 F.3d at 1056). "All of the circumstances are relevant, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Malone*, 646 F.3d at 517 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). "The standards for a hostile environment are demanding, and conduct must be extreme and not merely rude or unpleasant to affect the terms and conditions of employment." *Blomker*, 831 F.3d at 1057 (citation modified). "More than a few isolated incidents are required, and the alleged harassment must be so intimidating, offensive, or hostile that it poisoned the work environment." *Id.* (citation modified).

To the extent Robinson's claim of a hostile work environment based on race is brought under Title VII, it is barred because his charge of discrimination contained no allegations of discrimination or harassment on the basis of race. To the extent his claim is based on 42 U.S.C. §1981, it fails to state a claim. Robinson alleges that USI's actions "fostered a workplace filled with intimidation, unfair treatment, and hostility rooted in his age, race, religion, and sex, in violation of Title VII, the ADEA, and Section 1981." ECF 14-1 ¶ 6. He again mentions race when he claims that the harassment he experienced "was directly linked to his protected characteristics—his race, age, religion and sex." *Id.* ¶ 117. But nothing else in the amended complaint

mentions racial discrimination, and there are absolutely no facts from which an inference could be drawn that any of the things he complains about were based on race. *See Anderson*, 606 F.3d at 519 (plaintiff's hostile work environment claim failed where the complaint offered "little more than speculation and conjecture" that his managers' name calling, nitpicking, and ridicule had anything to do with race).

In any event, Robinson's hostile work environment claim fails regardless of the statute or protected class on which it is based because none of USI's alleged conduct rises to the level of actionable harassment. The actions that Robinson complains about in his hostile work environment claim are the same actions that he says support his other claims of discrimination. Unlike Robinson's other claims, however, his hostile work environment claim is subject to demanding standards that require objectively severe or pervasive harassment that is "so intimidating, offensive, or hostile that it poisoned the work environment," *Blomker*, 831 F.3d at 1057, and the proposed amended complaint does not allege USI did anything that could be considered severe or persuasive. *See O'Brien v. Dep't of Agric.*, 532 F.3d 805, 810 (8th Cir. 2008) (increased scrutiny insufficient); *Bradley v. Widnall*, 232 F.3d 626, 631-32 (8th Cir. 2000) ("frustrating work situation" insufficient). He does not allege that he was subjected to any intimidation, physically threatening or humiliating behavior, or even hostile comments showing animus on the basis of race, religion, age, or sex.

"Numerous cases have rejected hostile work environment claims premised upon facts equally or more egregious than the conduct at issue here." *Blomker*, 831 F.3d at 1058 (collecting cases); *see also LeGrand v. Area Res. for Cmty. & Hum. Servs.*, 394 F.3d 1098, 1100-03 (8th Cir. 2005) (no actionable harassment where harasser asked plaintiff to watch pornographic movies, masturbate together, suggested that plaintiff would advance professionally if he engaged in sexual acts, hugged plaintiff, kissed him on the mouth, grabbed his buttocks, brushed his groin, reached for his genitals, and gripped his thigh); *Duncan v. Gen. Motors Corp.*, 300 F.3d 928, 934-35 (8th Cir. 2002) (severe or pervasive harassment not shown where a co-worker propositioned plaintiff, inappropriately touched her hand on multiple occasions, asked her to sketch his sexually objectionable planter, created a poster of plaintiff that portrayed her as the president of the "Man Hater's Club," and asked plaintiff to type the beliefs of the "He-Men Women Haters Club"); *Clobes v. 3M Co.*, 106 F.4th 803, 808 (8th Cir. 2024) (alleged conduct "was not sufficiently intimidating, offensive, or hostile" where plaintiff was required to wear a mask, warned that he could be fired for not complying with the mask requirement, and subjected to a few months of company-wide emails and announcements regarding the vaccination requirement). Because Robinson fails to state a plausible claim of a hostile work environment, I will grant USI's motion to dismiss as to Count IV.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Leave to Amend the Complaint [14] is **GRANTED**, and the proposed amended complaint [14-1] is deemed filed today.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to Correct Attachments to Motion for Leave to Amend Complaint [15] is **GRANTED**.

**IT IS FINALLY ORDERED** that defendant Urban Strategies, Inc.'s Motion to Dismiss [8] is deemed directed to plaintiff's amended complaint and is **GRANTED** as to Count IV (hostile work environment) and **DENIED** in all other respects.

This case will be set for a Track 2 Rule 16 scheduling conference by separate order.

                                                */s/ Catherine D. Perry*
                                                CATHERINE D. PERRY
                                                UNITED STATES DISTRICT JUDGE

Dated this 10th day of February, 2026.